**Electronically Filed
Intermediate Court of Appeals
28207
25-FEB-2011
08:09 AM**

NO. 28207

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


AUSTIN ASHLEY, MARISSA ASHLEY and
ACTION TEAM REALTY, INC., Plaintiffs-Appellees,
v.
TODD E. HART and HART OF KONA REALTY, INC.,
Defendants-Appellants,
and
DEBRA A. HART, Defendant.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(S.P. NO. 06-1-0010K)


MEMORANDUM OPINION
(By: Nakamura, C.J., Fujise and Ginoza, JJ.)

Defendants-Appellants Todd E. Hart (Todd Hart) and Hart of Kona Realty, Inc. (HKRI) (collectively Hart Appellants) appeal from the September 20, 2006 Final Judgment entered by the Circuit Court of the Third Circuit (circuit court)[1] in favor of Plaintiffs-Appellees Austin Ashley, Marissa Ashley, and Action Team Realty, Inc. (collectively, the Ashleys) confirming a Final Arbitration Award dated June 5, 2006 (Arbitration Award). The Final Judgment was entered pursuant to the circuit court's September 11, 2006 order granting the Ashleys' motion to confirm,

_____

[1] The Honorable Greg K. Nakamura presided.

and denying the Hart Appellants' motion to vacate, the Arbitration Award.

For the reasons discussed below, we vacate the Final Judgment in favor of the Ashleys and remand for further proceedings. The Hart Appellants raise a number of issues on appeal, most of which we reject. However, further proceedings are necessary under Hawaii Revised Statutes (HRS) § 658A-23(a)(2)(C) (Supp. 2010) with respect to: the Arbitrator's apparent *ex parte* consultation with an attorney in her office; and two apparent *ex parte* telephone contacts between the Arbitrator and counsel for the Ashleys.

I. Case Background

This case arises from a Sale of Assets Agreement (Agreement) dated November 4, 2004 and entered into between Action Team Realty, Inc., whose principals were Todd Hart and Debra Hart (collectively the Harts), and Ashley Realty, Inc.[2] The Agreement called for, among other things, the assets of Action Team Realty, Inc. to be delivered to Ashley Realty, Inc., for the Harts to refrain from competition in real estate on the island of Hawai'i, and for Todd Hart to act as principal broker for the Ashleys after the sale for a period of time.

A dispute between the parties subsequently arose, wherein the Ashleys claimed that the Harts breached the Agreement because, *inter alia*: Todd Hart failed to comply with the non-compete provision by appropriating to himself certain real estate listings and by continuing to use the name of the company he sold; the Harts failed to disclose potential lawsuits; and Todd Hart failed to serve properly as principal broker for the company purchased by the Ashleys. The Harts in turn claimed that the Ashleys were liable for breach of contract for allegedly

---

[2] Debra Hart is not a party to the appeal.

2

discontinuing payments required under the Agreement. The parties agreed to submit the dispute to arbitration before Arbitrator Shawn Nakoa (Arbitrator). The arbitration provision in the Agreement stated:

> In the event of any disagreement or dispute with respect to the rights or obligations of the Parties under this Agreement, such disagreement or dispute shall be determined by a single arbitrator selected by the Parties or, in the event the Parties are unable to mutually agree upon a single arbitrator, to a single arbitrator appointed by the [circuit court] as provided by [HRS] Chapter 658. . . . The award of the arbitrator shall be final, conclusive and binding upon the Parties to this Agreement except as may otherwise be provided in [HRS] Chapter 658 but such award shall not be subject to further appeal.[3]

Following arbitration hearings on March 29-30, 2006, the Arbitrator found in favor of the Ashleys and against the Harts. On June 5, 2006, the Arbitrator issued the Arbitration Award, which determined that: Todd Hart committed multiple breaches of the covenant not to compete under the Agreement; Todd Hart committed multiple breaches of the warranty of quiet enjoyment under the Agreement; given the multiple breaches by Todd Hart, the Ashleys' failure to continue making monthly payments under the Agreement was reasonable and they did not materially breach the Agreement. The following award was made:

> The Arbitrator hereby releases [the Ashleys'] obligations under the subject Promissory Note and Mortgage. In addition, the Arbitrator hereby awards [the Ashleys] $500,000.00 in damages. [The Ashleys] are awarded attorney's fees and Arbitration costs pursuant to the [Agreement]. In addition, [the Harts] shall not use the tag line or logo "Call Todd!" in the future.

The Harts were also ordered to pay attorney's fees and costs in the amount of $68,564.88.

---

[3] Although the Agreement references HRS Chapter 658, that chapter was repealed by legislative action in 2001 and replaced by HRS Chapter 658A effective July 1, 2002. Pursuant to HRS § 658A-3(c), "[a]fter June 30, 2004, this chapter governs an agreement to arbitrate whenever made."

The parties thereafter continued to litigate this matter before the circuit court. On June 9, 2006, the Ashleys filed a motion to confirm the Arbitration Award. On July 27, 2006, the Hart Appellants filed a motion to vacate the Arbitration Award. On September 11, 2006, the circuit court issued a single order granting the Ashleys' motion to confirm the Arbitration Award and denying the Hart Appellants' motion to vacate the Arbitration Award. On September 20, 2006, the circuit court entered the judgment in favor of the Ashleys, and this appeal followed.

II. Issues on Appeal

On appeal, the Hart Appellants contend that the circuit court erred in confirming the Arbitration Award because:

(1) the Arbitrator engaged in *ex parte* communications with the Ashleys' counsel, which was misconduct "prejudicing the rights of a party to the arbitration proceeding," and indicates "evident partiality" under HRS § 658A-23 (Supp. 2010);

(2) the Arbitrator exceeded the scope of her authority by: (a) considering evidence outside of the Arbitration hearing; (b) awarding damages in the amount of $500,000; (c) awarding damages in the form of rescission of the Promissory Note; and (d) ruling on the rights and liabilities of a person who was not a party to the Agreement or the Arbitration proceeding;

(3) Ken Ross (Ross), an attorney in the Arbitrator's office who was not appointed by the parties, participated in arbitrating the matter without the consent of the parties and without making appropriate disclosures;

(4) the Arbitration Award is in violation of public policy; and

(5) the Arbitration Award is ambiguous and imperfect as to form.

4

III. Standards of Review

"We review the circuit court's ruling on an arbitration award *de novo*, but we also are mindful that the circuit court's review of arbitral awards must be extremely narrow and exceedingly deferential." Kona Village Realty, Inc. v. Sunstone Realty Partners, XIV, LLC, 121 Hawaiʻi 110, 112, 214 P.3d 1100, 1102 (App. 2009) (quoting Tatibouet v. Ellsworth, 99 Hawaiʻi 226, 233, 54 P.3d 397, 404 (2002) (internal quotation marks omitted)).

Hawaii's appellate courts have repeatedly noted that "because of the legislative policy to encourage arbitration and thereby discourage litigation, arbitrators have broad discretion in resolving the dispute[,]" and that "where the parties agree to arbitrate, they thereby assume all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact." Kona Village Realty, 121 Hawaiʻi at 112, 214 P.3d at 1102 (quoting Schmidt v. Pac. Benefit Servs., Inc., 113 Hawaiʻi 161, 165-66, 150 P.3d 810, 814-15 (2006)). Consequently, "judicial review of an arbitration award is confined to the strictest possible limits," Kona Village Realty, 121 Hawaiʻi at 112, 214 P.3d at 1102; Daiichi Hawaiʻi Real Estate v. Lichter, 103 Hawaiʻi 325, 336, 82 P.3d 411, 422 (2003). Pursuant to HRS Chapter 658A, an arbitration award may only be vacated as specified in HRS § 658A-23.

As for the circuit court's findings of fact and conclusions of law, we review its findings of fact under the clearly erroneous standard and its conclusions of law *de novo*, under the right/wrong standard. Daiichi Hawaiʻi Real Estate, 103 Hawaiʻi at 337, 82 P.3d at 423.

IV. *Ex Parte* Consultation With Ross

We take the issues on appeal out-of-order and first address the Hart Appellants' argument that Ross improperly

5

participated in arbitrating the case.  The Hart Appellants raise a variety of arguments as to why the Arbitrator's alleged *ex parte* consultation with Ross should be a basis for vacating the Arbitration Award, including that the Arbitrator exceeded her powers and that the arbitration process was undermined because they did not consent to Ross's participation and Ross did not make disclosures required under HRS § 658A-12.

The Agreement authorized a single arbitrator selected by the parties to resolve the parties' disputes.  The billing records from the Arbitrator's office reflect that she conferred with Ross for a total of 1.1 hours, with the following entries for work performed by Ross:

| 01-31-06 | CONF W/SMN RE POSTPON[E]MENT, ETC.   [0.30 hours] |
| 04-05-06 | CONF W/SMN RE LIABILITY AND DAMAGES [0.30 hours] |
| 04-18-06 | (ACTION TEAM/ASHLEY) REVIEW ARBITRATION AWARD/CONF W/SMN RE SUGGESTED CHANGES TO AWARD TO REFLECT DECISION MADE             [0.50 hours] |

It is pointedly disputed in the record on appeal whether or not the parties agreed that the Arbitrator could consult with her colleagues, including Ross.  The Hart Appellants contend that they first learned of Ross's participation when they received the Arbitrator's invoices after the Arbitration Award was issued, and that they never consented to his participation. To the contrary, the Ashleys contend that at the initial pre-hearing conference on September 13, 2005, the Arbitrator discussed consulting with her colleagues and the parties agreed. The declaration of Stephen Whittaker (Whittaker), counsel for the Ashleys, states that:

> The Arbitrator raised an issue regarding the rules she would follow, including her authority to consult with her colleagues in accordance with the Court Annexed Arbitration Program.  The parties participating, including Ms. Kotner for Mr. Hart and Hart of Kona Realty, Inc., agreed to apply

6

the CAAP rules, to allow the Arbitrator to consult her
colleagues . . . ."[4]

The Hart Appellants respond, relying on the declaration of their
counsel Usha Kilpatrick Kotner (Kotner), as follows:

> I was present at the arbitration pre-hearing conference held
> in this matter on September 13, 2005. I do not recall
> discussing the issue of the Arbitrator's authority to
> consult with her colleagues at such pre-hearing conference,
> or at any other time. I have reviewed my notes written
> contemporaneously during the conference, and I do not find
> any reference to a discussion regarding the Arbitrator's
> authority to consult with her colleagues.

The circuit court did not make any findings as to
whether the parties discussed and/or agreed to the Arbitrator's
consultation with her colleagues, did not make any conclusions as
to the alleged lack of consent or disclosures related to Ross,
and did not address any potential prejudice to the Hart
Appellants. The circuit court instead made the limited ruling
that the Arbitrator did not exceed her powers because:
"Defendants do not point to any specific provision in Chapter
658A, HRS, which prohibits the Arbitrator consulting with anyone
in her office"; and, to the extent the American Arbitration
Association's (AAA) Code of Ethics for Arbitrators applied, it
assumes an arbitrator can receive assistance from others in the
arbitrator's office.[5] In our view, these rulings do not properly
address or resolve the issue.

---

[4] The Ashleys assert that under CAAP guidelines, an arbitrator may
consult with colleagues. Following the pre-hearing conference, in
correspondence to the parties dated September 19, 2005, the Arbitrator noted
there was a discussion at the pre-hearing conference about using the CAAP
procedures, but that she had determined that HRS Chapter 658A applied. There
is no reference in the correspondence to consulting with her colleagues and it
is unclear what import the discussion on the CAAP rules has to this issue.

[5] The circuit court did not address that the AAA Code of Ethics
provision it quoted also provided that the arbitrator should inform the
parties of the use of assistance from others. Nonetheless, because the AAA
rules were not adopted in the Agreement in this case, it is of limited use.

A significant question raised by the Hart Appellants is whether the arbitration process was undermined due to Ross's participation. Although there does not appear to be controlling Hawai'i case law addressing a similar circumstance, cases from federal courts provide some guidance, suggesting that the relevant inquiry is whether an arbitrator's alleged *ex parte* communications with a consultant or expert rose to the level of prejudicial misconduct.[6] See United States Life Ins. Co. v. Superior Nat'l Ins. Co., 591 F.3d 1167 (9th Cir. 2010); Lefkovitz v. Wagner, 395 F.3d 773 (7th Cir. 2005); Journal Times v. Milwaukee Typographical Union No. 23, 409 F. Supp. 24 (D.Wis. 1976). "The burden of establishing grounds for vacating an arbitration award is on the party seeking it." United States Life Ins. Co., 591 F.3d at 1173.

The relevant question is therefore whether the Hart Appellants can establish prejudicial misconduct under HRS § 658A-23(a)(2)(C), which provides:

> [§658A-23] **Vacating award.** (a) Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:
>
> . . . .
>
> (2)    There was:
>
> . . . .
>
> (C)    Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;

On the existing record, we cannot and therefore make no conclusion on the issue. Rather, given the evidence of apparent

---

[6] Similar to the Uniform Arbitration Act adopted by Hawai'i, § 10(a)(3) of the Federal Arbitration Act provides for an arbitration award to be vacated because of, *inter alia*, "any other misbehavior by which the rights of any party have been prejudiced." Reliance on relevant federal case law is therefore appropriate. See Daiichi Hawai'i Real Estate Corp., 103 Hawai'i at 339, 82 P.3d at 425.

*ex parte* consultations with Ross and the disputed facts, further proceedings are necessary to determine whether the alleged consultation with Ross was prejudicial misconduct. First, based on the declarations of counsel, there is direct contrary evidence as to whether the Arbitrator disclosed and/or the parties agreed that she would be consulting with her colleagues. Second, given the limited description of work in the billing statements and without any evidence as to potential conflicts Ross may have, we are unable to properly assess whether the consultation by Ross was prejudicial to the Hart Appellants. In this regard, even if there were undisclosed *ex parte* communications, the Hart Appellants would have the burden of establishing prejudice. "Ex parte conduct by an arbitration panel requires vacatur of an award *only* if the ex parte conduct constitutes misbehavior that prejudices the rights of a party." United States Life Ins. Co., 591 F.3d at 1176.

In Clawson v. Habilitat, Inc., 71 Haw. 76, 783 P.2d 1230 (1989), where there was factual uncertainty in the record, the Hawai'i Supreme Court remanded the case for entry of factual findings and conclusions of law related to whether an arbitration award should be vacated. The supreme court held that "whenever material facts are in dispute in determining whether an arbitration award should be vacated, the circuit court should conduct an evidentiary hearing and render findings of fact and conclusions of law in support of granting or denying the motion to vacate the arbitration award." Id. at 79, 783 P.2d at 1232.

Further, the revised Uniform Arbitration Act adopted in Hawai'i in 2001 and codified as HRS Chapter 658A, also contemplates that if there is *prima facie* evidence of, *inter alia*, prejudicial misconduct, the Arbitrator may provide evidence on the issue. HRS § 658A-14(d)(2) (Supp. 2010). Although an arbitrator is generally "not competent to testify" and "shall not

be required to produce records" regarding matters in an arbitration proceeding, HRS § 658A-14(d)(2) provides an exception in limited circumstances. That is, HRS § 658A-14(d)(2) states that the general rule precluding an arbitrator's testimony or production of records does not apply "[t]o a hearing on a motion to vacate an award under section 658A-23(a)(1) or (2) if the movant establishes prima facie that a ground for vacating the award exists."[7]

We therefore remand this issue to the circuit court for further proceedings, to make relevant findings and conclusions, and to determine whether the Arbitrator's consultation with Ross constituted prejudicial misconduct under HRS § 658A-23(a)(2)(C). In addition to any further relevant information from the parties, their counsel, Ross, and/or others, we believe these circumstances allow for the Arbitrator to clarify this issue.

V.     *Ex Parte* Communications Between the Arbitrator and the
       Ashleys' Counsel

The Hart Appellants also claim that the Arbitrator had *ex parte* communications with Whittaker, the Ashleys' counsel, and failed to disclose the communications. The Hart Appellants point to the following communications: (1) six telephone conversations between the Arbitrator and Whittaker, which appear in the billing records of Whittaker and the Arbitrator; (2) subpoenas from Whittaker, which the Hart Appellants claim not to have timely received; and (3) two sets of the Arbitrator's invoices that were not timely provided to the Hart Appellants.

The Hart Appellants urge that the Arbitration Award must therefore be vacated based on the provisions of HRS § 658A-23(a)(2)(A) and (C). These provisions state:

---

[7] In a submission to the circuit court, the Ashleys noted the possibility that HRS § 658A-14(d)(2) may be applicable in this case.

> [§658A-23] Vacating award. (a) Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:
>
> . . . .
>
> (2)    There was:
>
> (A)    Evident partiality by an arbitrator appointed as a neutral arbitrator;
>
> . . . . or
>
> (C)    Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;

We conclude that, with respect to two *ex parte* telephone contacts, there are material facts in dispute requiring further proceedings on the question of prejudicial misconduct. In all other respects, the circuit court's ruling on these issues was not in error.

A.    Prejudicial Misconduct

The circuit court found, and the Ashleys do not dispute, that there were *ex parte* telephone discussions between the Arbitrator and Whittaker. Whittaker's declaration, however, shows that four calls in mid-March 2006 were about ministerial matters involving subpoena duces tecum Whittaker wanted for witnesses to appear on the date of the hearing (scheduled to begin on March 29, 2006) and to bring documents. These *ex parte* discussions included such matters as the Arbitrator's logistical concern about numerous witnesses appearing at her office with documents.[8] The matter of the subpoenas was discussed at a joint conference call with the parties a few days later, on March 15, 2006, although the record does not indicate if the *ex parte*

---

[8]    It is relevant to note that the circuit court made the finding, which is unchallenged on appeal, that "[n]or is this a case where the issuance of subpoenas resulted in the receipt of *ex parte* evidence." The record indicates that, rather than live witnesses at the hearing, Whittaker instead chose to submit evidence by way of their declarations.

discussions themselves were discussed.  We conclude there was no prejudicial misconduct with respect to these calls.

For two other calls, however, one on December 7, 2005 and another on January 26, 2006, the material facts are in dispute.  The entry for December 7, 2005 in the Arbitrator's billing records states: "TELEPHONE CONFERENCE WITH S. WHITTAKER RE UPCOMING HEARING."  The entry for January 26, 2006 contained in Whittaker's billing records states: " . . . brief conference with Shawn Nakoa."  The declaration of Whittaker and attached exhibits suggests that around the time of the December 7, 2005 telephone call, there were issues regarding representation of the Hart Appellants and Debra Hart, but there is no direct evidence as to the subject of the call between the Arbitrator and Whittaker.  As to the January 26, 2006 call, the record reflects this is the same day the Arbitrator made an *ex parte* contact with David Smith (Smith), the Hart Appellants' substitute counsel for a short period, regarding "representation."  Again, however, there is no direct evidence as to the subject of the Arbitrator's call with Whittaker.

Given this record, the entries regarding *ex parte* calls between the Arbitrator and Whittaker on December 7, 2005 and January 26, 2006 present material facts in dispute that require further inquiry.  Clawson, 71 Haw. at 79, 783 P.2d at 1232. Therefore, we remand to the circuit court for further proceedings, to make relevant findings and conclusions, and to determine whether the Arbitrator's telephone contacts with Whittaker on these dates constitute prejudicial misconduct under HRS § 658A-23(a)(2)(C).  In addition to any other relevant information, we believe these circumstances also allow for the Arbitrator to clarify this issue pursuant to HRS § 658A-14(d)(2).

As to the other alleged *ex parte* contacts with Whittaker, we agree with the circuit court's determination that

12

the delayed production of Whittaker's subpoenas and the Arbitrator's billing statements do not support a determination of prejudicial misconduct.  As to the subpoenas, the declarations of Whittaker and Kotner establish that Whittaker's subpoena of witnesses was discussed at the joint conference call with the Arbitrator on March 15, 2006.  There is also nothing in the record to suggest the Arbitrator had the obligation to serve the witness subpoenas on the Hart Appellants.[9]  Additionally, the circuit court correctly found that the subpoenaed witnesses did not testify at the arbitration hearing.  Rather, "[i]n lieu of live witness testimony, declarations were presented.  The Arbitrator offered to Defendants the opportunity to call the declarants as witnesses to cross examine them.  Defendants' counsel declined."

With regard to their untimely receipt of the Arbitrator's billing statements, the Hart Appellants argue that they were denied the opportunity to raise objections based on information in the statements.  They have, however, raised such objections before the circuit court and again in the instant appeal and therefore have not been prejudiced.

B.   Evident Partiality

With regard to HRS § 658A-23(a)(2)(A), evident partiality is present "when undisclosed facts show a reasonable impression of partiality."  Kay v. Kaiser Found. Health Plan, Inc., 119 Hawai'i 219, 226, 194 P.3d 1181, 1188 (App. 2008) (finding evident partiality where undisclosed facts concerning arbitrator's prior and on-going relationship with medical defendant created impression of possible bias such that

---

[9]  HRS § 658A-17(a) provides the authority for an arbitrator to issue subpoenas and states that a "subpoena shall be served in the manner for service of subpoenas in a civil action."  Rule 45(a) of the Hawai'i Rules of Civil Procedure provides that the clerk of court shall issue a subpoena "to a party requesting it, who shall fill it in before service."

arbitrator's failure to disclose her dealings prejudicially tainted arbitration award). "The burden of proving facts which would establish a reasonable impression of partiality rests squarely on the party challenging the award." Daiichi Hawaiʻi Real Estate, 103 Hawaiʻi at 339, 82 P.3d at 425 (citation and internal quotation marks omitted).

With regard to the *ex parte* telephone calls between the Arbitrator and Whittaker, the record as a whole convinces us that there is no "reasonable impression of partiality." That is, not only did the calls in mid-March 2006 address ministerial matters, but there is clear evidence that *ex parte* contacts occurred on both sides. The Arbitrator's billing records have entries showing two attempts on November 10, 2005 to make *ex parte* contact with the Hart Appellants' counsel, Kotner,[10] as well as the *ex parte* telephone call on January 26, 2006 with Smith, the Hart Appellants' substitute counsel for a short period of time. These entries reflect that the Arbitrator initiated contact with counsel on both sides on occasion in an *ex parte* manner. While this practice may not be ideal (and although we perceive the question of prejudicial misconduct to be a separate and distinct issue), the overall record reflects no evident partiality.

On this record, we conclude that there is not "a reasonable impression of partiality" on the part of the Arbitrator. The claim by the Hart Appellants that "the failure to disclose *ex parte* communications *per se* constitutes evident partiality under [HRS] § 658A-23(a)(2)(A)" is without authoritative support. Moreover, their reliance on Valrose Maui,

_____

[10] The Arbitrator's billing records indicate the calls to Kotner were made after the Arbitrator reviewed a fax from Kotner that she was withdrawing as counsel for the Harts. Kotner later returned to the case to represent the Hart Appellants.

14

Inc. v. Maclyn Morris, Inc., 105 F. Supp. 2d 1118 (D. Hawaiʻi 2000) is misplaced.

In Valrose, the United States District Court for the District of Hawaiʻi applied Hawaiʻi law and vacated an arbitration award based on its conclusion that there was "a reasonable impression of partiality" on the part of the arbitrator due to an undisclosed conflict of interest. Valrose, 105 F. Supp. 2d at 1124. In that case, while the arbitration was pending, the arbitrator had an undisclosed *ex parte* discussion with counsel representing the plaintiff about the possibility of the arbitrator serving as mediator in an unrelated case involving one of the attorney's other clients. Id. It was also undisclosed that, while the arbitration proceeding was ongoing, the arbitrator was appointed as the mediator in the other action. Id. The U.S. District Court concluded that the failure to disclose the known conflict of interest warranted the arbitration award being vacated. Id.

In contrast, for the case at bar, the circuit court correctly found that there was no evidence that the alleged *ex parte* communications created a possible conflict of interest for the Arbitrator and no evidence that the Arbitrator failed to disclose a possible conflict of interest.

With regard to the other alleged *ex parte* communications with Whittaker, those communications also do not establish evident partiality. As noted above, for the alleged untimely service of Whittaker's witness subpoenas, there is nothing in the record to indicate that it was the Arbitrator's obligation to serve the subpoenas on the Hart Appellants. Additionally, regarding the late service of the Arbitrator's billing statements to the Hart Appellants, it was not clear error for the circuit court to find that the failure to concurrently

provide the Hart Appellants with two of the billing statements appears to have been an oversight.

VI. Scope of Arbitrator's Authority

An arbitration award must be vacated where "[a]n arbitrator exceeded the arbitrator's powers." HRS § 658A-23(a)(4). "The scope of an arbitrator's authority is determined by the relevant agreement." Hamada v. Westcott, 102 Hawai'i 210, 214, 74 P.3d 33, 37 (2003) (brackets and citations omitted). The arbitration provision in the Agreement in this case conferred upon the Arbitrator the authority to decide "any disagreement or dispute with respect to the rights or obligations of the Parties under this Agreement." Given this broad language, we conclude the Arbitrator did not exceed the scope of her authority as asserted by the Hart Appellants.

A. Alleged Outside Evidence and Advice

The Hart Appellants contend that the Arbitrator exceeded her powers by considering "advice" from Debra Hart's family court attorney, Ira Leitel (Leitel), and family court documents regarding the rights and obligations of the Harts in a pending divorce action. We do not agree.

During the pendency of this matter, Todd Hart and Debra Hart were involved in divorce proceedings, and the Arbitrator requested and received redacted copies of family court orders entered therein. In the Arbitration Award, the Arbitrator ruled that pursuant to the Agreement, "Todd E. Hart's multiple breaches of the Covenant Not to Compete are chargeable to Debra Hart equally where both Mr. and Mrs. Hart ("Sellers") promised the Buyers good title to the assets and freedom from competition on the Big Island for a period of five (5) years." The Arbitration Award then contains a footnote that reads, "Ira Leitel, Esq., Debra Hart's divorce attorney, advised (during a pre-hearing conference) that the Family Court has ordered that Mr. Hart shall

16

be responsible for any breaches and consequences of the subject Arbitration."

Despite the claims by the Hart Appellants, the Arbitrator merely noted the consequences of the orders in the family court matter as they related to her resolution of the instant dispute, which was not beyond the Arbitrator's powers under the Agreement. Similarly, the fact that the family court matters were presented outside the hearing does not take their consideration beyond the Arbitrator's powers under the Agreement. Rather, there was no objection to Leitel appearing at a pre-hearing conference for the arbitration and the parties were well aware that he provided documents requested by the Arbitrator.

B.    Damages

The Arbitrator did not exceed her powers by awarding damages in the amount of $500,000 in addition to ordering rescission of the promissory note. The provisions in the Agreement as to potential remedies are very broad. There is a remedy provision in the event that the Harts breached the Covenant Not to Compete, which states:

> In the event of any breach or anticipated breach of this restrictive covenant, the Buyer shall be entitled to sue in equity to enjoin such breach or anticipated breach and to seek any other and all legal equitable remedies to which Buyer may be entitled on account thereof and shall be entitled to receive as compensation for any such breach damages in the amount of any commissions received by the Indemnitors from any such sale which is in violation of this covenant not to compete, together with such attorneys['] fees and costs as the Buyer may incur in enforcing this covenant and in collecting any such damages.

Additionally, the Agreement provides:

> No remedy conferred by any of the specific provisions of this Agreement is intended to be exclusive of any other remedy, and each and every remedy shall be cumulative and shall be in addition to every other remedy provided at law or in equity or by statu[t]e or otherwise. The election of any one or more remedies by the Buyer or the Seller shall not constitute a waiver of the right to pursue other available remedies.

The Ashleys requested damages of $828,436 in lost commissions and $273,555 in lost time and effort, as well as relief from their obligations to make payments to the Harts under a promissory note executed by the parties in favor of the Harts. The Arbitrator awarded the Ashleys $500,000 in damages and released the Ashleys from their obligations under the promissory note. Such an award was within the Arbitrator's powers under the Agreement.

For similar reasons, we do not agree with the Hart Appellants' claim that the Ashleys' remedy was limited to recovery of commissions actually earned. The provisions of the Agreement are far broader than asserted by the Hart Appellants.

We also do not agree with the Hart Appellants' argument that the Arbitration Award constitutes punitive damages. The Ashleys did not request punitive damages and nothing in the award indicates that the damages awarded were intended to be punitive in nature.

C.   Ruling Regarding Non-Party

The Hart Appellants contend that the Arbitrator exceeded her powers because the Arbitration Award allegedly addressed the conduct of a non-party. In claiming that the Harts violated the Agreement's Covenant Not to Compete, the Ashleys asserted that Todd Hart was competing in the real estate industry on the island of Hawai'i through Carol Hono (Hono). The Arbitration Award does not make any ruling with regard to Hono and does not make the award applicable to her. The Hart Appellants incorrectly couch the Arbitration Award as affecting the "rights and liabilities" of a non-party. Further, even if it is assumed, as urged by the Hart Appellants, that the Arbitrator found Todd Hart breached the Agreement "through real estate work performed and commissions allegedly earned by [Hono]," that would have been within the Arbitrator's power given the relevant issues at stake in the arbitration. We therefore reject this argument.

18

VII. <u>Public Policy</u>

The Hart Appellants also urge this court to find that the circuit court erred in confirming the final Arbitration Award because the award is in violation of public policy. As this court has recognized in the past, "there is a limited public policy exception to the general deference given arbitration awards." <u>Inlandboatmen's Union v. Sause Bros., Inc.</u>, 77 Hawai'i 187, 194, 881 P.2d 1255, 1262 (App. 1994) (no public policy exception where violation of statute was merely hypothetical and not clearly shown). However, that exception has been narrowly defined:

> [T]he test established for application of the public policy exception requires a court to determine that (1) the award would violate some explicit public policy that is well defined and dominant, and that is ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests, and (2) the violation of the public policy is clearly shown.

<u>Id.</u> at 193-94, 881 P.2d at 1261-62 (citation, internal quotation marks, brackets, and ellipses omitted).

The Hart Appellants have not established that the Arbitration Award violates "some explicit public policy." Although they take issue with the Arbitrator's award to the Ashleys of both monetary damages as well as release from obligations under the promissory note, even assuming *arguendo* that a court could not provide such relief, "[t]he fact that such a remedy could not or would not be granted by the court is not a ground for refusing to confirm an award under section 658A-22 or for vacating an award under section 658A-23." HRS § 658A-21(c) (Supp. 2010).

VIII. <u>Ambiguous/Imperfect Award</u>

The Hart Appellants argue that the Arbitration Award should be vacated because it is ambiguous and imperfect as to form. They cite no authority for their proposition that an

19

arbitration award can be *vacated* because it is ambiguous and/or imperfect as to form. Under HRS § 658A-20 (Supp. 2010), clarification and modification of the Arbitration Award by the Arbitrator is allowed, and the Hart Appellants made such a request to the Arbitrator. They did not, however, seek modification or correction of the Arbitration Award from the circuit court pursuant to HRS § 658A-24 (Supp. 2010). The Hart Appellants have not preserved court review to modify or correct the Arbitration Award, and we cannot vacate the award due to alleged ambiguity or imperfection.

IX. Conclusion

We vacate the Final Judgment entered by the circuit court on September 20, 2006 and remand for further proceedings consistent with this opinion on the limited issues of:

(a) whether the Arbitrator's alleged *ex parte* consultation with Ross constituted prejudicial misconduct under HRS § 658A-23(a)(2)(C); and (b) whether the Arbitrator's *ex parte* telephone contacts with Whittaker on December 7, 2005 and January 26, 2006 constituted prejudicial misconduct under HRS § 658A-23(a)(2)(C).

We affirm the circuit court as to all other issues raised in this appeal.

DATED: Honolulu, Hawai'i, February 25, 2011.

On the briefs:

Francis L. Jung
Usha Kilpatrick Kotner
Ann Southwick Datta
(Jung & Vassar, P.C.)
for Defendants-Appellants

Stephen D. Whittaker
(Stephen D. Whittaker, AAL, LLLC)
for Plaintiffs-Appellees

Chief Judge

Associate Judge

Associate Judge

20